Filed
RECEIVED

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

2013 SEP 25  PM 3: 06

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

UNITED STATES OF AMERICA,

v.                                              Case No. 2:13-cr-72-FtM-JES

DAVID LEON FREDRICK and                         UNDER SEAL
PATRICIA LYNN HOUGH,

## MOTION FOR DETERMINATION OF PRIVILEGE

COMES NOW, the United States of America, by and through the undersigned

attorney, and hereby moves this Court to make a final determination regarding privilege

of sixty-four documents due to Defendant David Fredrick's non-appearance in this

matter.

### I.    BACKGROUND

On May 15, 2013, David Fredrick ("Fredrick") and Patricia Hough ("Hough") were

indicted on four counts of false returns each and one count of conspiracy. Dkt. #1. Trial

is currently set for October 8, 2013. However, Fredrick is not expected to be present as

he failed to appear for arraignment. Dkt. #24. During the grand jury investigation,

Fredrick was represented by Nathan Hochman of Bingham McCutchen, LLC, while

Hough was represented by Charles Faulk. On May 28, 2013, Hochman ceased to

represent Fredrick. Dkt. #19-1, Exhibit A. On that same date, Hochman was hired to

represent Hough. Dkt. #19-3, Exhibit C.

During the grand jury investigation, David Minchenburg, ("Minchenburg"), the

former CFO of the defendants' entities including Saba and MUA, and Schneider &

Associates ("S&A"), an accounting firm retained by the defendants, provided the

1

government with documents that potentially contained attorney-client communications and attorney work product. In January 2012, the Government advised the Court of its intent to implement proposed procedures for the review of potentially privileged documents. The Court issued an Order on February 2, 2012, declining to approve taint procedures.

To balance the interests of the Government and the Defendants, the Government arranged for a team of attorneys (the "taint team") from the Department of Justice, Tax Division, who do not have responsibility for the prosecution of this case, to review the documents obtained from Minchenburg and S&A to determine whether the attorney-client privilege or work product protection may apply. The taint team attorneys were briefed on the facts of this case. The taint team attorneys have not communicated with the prosecution team regarding the contents of documents claimed to be privileged.

In April 2013, the taint team attorneys and counsel for both defendants reached an agreement regarding documents provided by Minchenberg and S&A. The taint team attorneys and counsel for the defendants agreed that certain documents would not be provided to the prosecution team, and the rest were produced. In August 2013, it became apparent to the taint team that a disk provided by Minchenberg with the initial documents was not reviewed. The taint team immediately provided the documents to Hough's counsel and performed a review of the contents. The taint team and counsel for defendant Hough were able to reach an agreement regarding the additional documents. The majority of the documents, which had no reference to an attorney or law firm, were produced to the prosecution team. Additional documents are being withheld from the prosecution subject to defendant Hough's assertion of privilege. There

remain sixty-four documents that reference an attorney ("AR documents"), but do not fall under any attorney-client privilege. Exhibit A. The AR documents are largely emails from Minchenberg that cover a variety of topics from administrative functions to an audit of the entities controlled by the defendants.

The taint team loosely categorizes the AR documents as follows:

1.   Emails between the defendants and Minchenberg that reference an attorney, but contain no privileged communication from that attorney.

2.  Emails between Fredrick and/or Minchenberg and one of the attorneys, but content is not seeking legal advice.

3.  Emails between Fredrick and/or Minchenberg and Schneider & Associates that reference an attorney, but do not discuss confidential content.

The prosecution team has not been provided with these sixty-four documents.

On September 19, 2013, counsel for Hough confirmed that the AR documents do not contain any privileged material and therefore may be provided to the prosecution team. However, because Fredrick's whereabouts and whether he is even represented are unknown, the taint team is unable to learn his position regarding the AR documents.

As such, the taint team respectfully requests the court to review the attached documents *in camera* and make a final determination that the AR documents may be provided to the prosecution team because they do not include any information that should be protected by privilege.

In order to assist the court in a review of the documents for privilege a log is attached. Exhibit B. Based on the review of the documents, the defendants and/or their

3

controlled entities may have had attorney-client relationships[1] with the following

attorneys or firms:

| Peter Glicklich, Candice Turner, Scott Semer | Davies, Ward, Phillips & Vineberg, LLP |
|---|---|
| Jonathon Glass | Dow, Lohnes & Albertson, PLLC |
| Bob Harris | Messer, Caparello & Self |
| John Bowman | Firm Unknown |
| Michael Refolo, Michael Angelini | Bowditch & Dewey, LLP |

## II.   LAW AND DISCUSSION

### Attorney-Client Privilege

The purpose of the attorney-client privilege "is to encourage full and frank

communication between attorneys and their clients and thereby promote broader public

interests in the observance of law and administration of justice." *Upjohn v. United

States*, 449 U.S. 383, 389 (1981).  The attorney-client privilege is defined as "a

communication made between privileged persons, in confidence, for the purpose of

seeking, obtaining, or providing legal assistance for the client."  The Attorney-Client

Privilege and the Work-Product Doctrine, 2nd ed, ABA Section of Litigation (1989). "The

privilege only protects disclosure of confidential communications; it does not protect

disclosure of the underlying facts by those who communicated with the attorney."

*Upjohn*, 449 U.S. at 395.  In fact, only the confidential communications, not the attorney-

client relationship as a whole, are protected.  *Matter of Walsh*, 623 F.2d 489, 493 (7th

---

[1] It should be noted that at no time has either defendant documented a specific attorney-client relationship between themselves and/or their entities and one of the listed law firms.  However, based on the taint team's interview with Jerry Schneider of Schneider & Associates, the taint team learned that part of the audit involved determining the impact of certain tax liabilities.  In order to gain a greater understanding of those tax liabilities, Schneider recommended to Fredrick that he engage the services of Peter Glicklich of Davies, Ward, Phillips & Vineberg LLP. As a result of Schneider's recommendation, Glicklich's advice was sought.

4

Cir.1980); *Goddard v. United States*, 131 F.2d 220 (5th Cir. 1942) ("the privilege claimed extended only to the communications made in the attorney-client relationship, not to the fact that such a relationship existed.")

As a general matter, "the party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential." *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. Ga. 1991). Indeed, it is not proper for the court to "invert[] the burden of proof, improperly placing the onus on the government to show what information was not privileged." *United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009).

**Limits to the Attorney-Client Privilege**

It is essential that the communication was meant to be kept secret. *In re Grand Jury Proceedings* 88-9, 899 F.2d 1039, 1042 (11th Cir. 1990); *United States v. Bump*, 605 F.2d 548, 550 (10th Cir. 1979). Therefore, the privilege does not extend to communications made by a client to his attorney with the understanding that it will be disclosed to third parties. *Couch v. United States*, 409 U.S. 322, 335-36 (1976). Nor does the privilege apply if the attorney communicates information to his client by acting as a conduit for non-confidential information. *In re Grand Jury Proceedings*, 969 F.2d 995, 007 (11th Cir. 1992); *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010).

**Business Advice is Not Protected**

When a client seeks business or non-legal advice, there is no privilege as the attorney-client privilege "is triggered only by a client's request for legal, as contrasted with business advice." *In re Grand Jury Subpoena Duces Tecum (Marc Rich & Co.)*,

731 F.2d 1032, 1037 (2nd Cir. 1984); *In re Grand Jury Proceedings* 88-9, 899 F.2d
1039, 1042 (11th Cir. 1990).  Regarding in-house counsel, "privilege will apply only if
the communication's primary purpose is to gain or provide legal assistance.  Business
communications are not protected merely because they are directed to an attorney, and
communications at meetings attended or directed by attorneys are not automatically
privileged as a result of the attorney's presence.  Rather, the corporation 'must clearly
demonstrate that the communication in question was made for the express purpose of
securing legal not business advice." *Curtis v. Alcoa, Inc.*, 2009 WL 838232 at 2 (E.D.
Tenn. 2009).  On the other hand, sometimes business and legal considerations are
"inextricably intertwined," and the "fact that business considerations are weighed in the
rendering of legal advice does not vitiate the attorney-client privilege." *In re Search
Warrant Executed at Law Offices of Stephen Garea*, 173 F.3d 429 (6th Cir. 1999).
Courts apply the protection of the privilege "more narrowly and cautiously to corporate
in-house counsel . . . . Less protection is warranted when company officers have a
mixed responsibility incorporating both business and legal aspects, and where their
advice and communications are based on an on-going permanent business relationship
rather than specific requests for legal advice." *In re Ford Motor Co. Crown Victoria
Police Interceptor Products Liability Litigation*, 2003 WL 22217673, at 1 (N.D. Ohio
2003); *see generally Upjohn Co. v. United States*, 449 U.S. 383 (1981).

**The Accountant-Client Relationship Is Not Privileged**

By contrast to the attorney-client privilege, there is no recognizable accountant-
client privilege. *United States v. Arthur Young & Co.*, 465 U.S. 805, 817 (1984) ("'No
confidential accountant-client privilege exists under federal law.'") (citing *Couch v.*

6

*United States,* 409 U.S. 322, 335 (1973)); *In Re of Int'l Horizons Inc.* 689 F.2d 996, 1004 (11th Cir. 1982) ("the notion that the federal courts should recognize a general accountant-client privilege has been consistently rejected.")   Although 26 U.S.C. § 7525(a)(1) extends any existing common law attorney-client privilege to taxpayer/tax-practitioner relationships, section (a)(2) of this statute confines its application to noncriminal matters. As a result, all of the correspondence and work completed by Schneider & Associates and the in-house CFO David Minchenberg is not protected by privilege, unless there is some specific attorney relationship.[2]

## Discussion

It is Frederick's burden to assert any potential privilege.[3] In Frederick's absence, there is no one to assert that privilege on his behalf. However, even if Fredrick were present and claimed privilege, it is the taint team's position that the documents do not contain any privileged information.

The documents do not detail any confidential communications between attorneys Glicklich, Glass, Harris, Bowman, or Refolo and the defendants. Instead, the AR documents are largely communications between Minchenberg and one of several accountants at S&A, or the defendants regarding other issues including legal bills, the audit, and the day-to-day running of the businesses. Several AR documents reference an attorney in the subject line, but the body of the email discusses a mundane

---

[2] It was the defendants' position in April 2013 that an opinion was sought from attorney Peter Glicklich and the subject matter of that opinion would fall under an attorney-client protection.  The taint team is not challenging this position at this time.

[3] As noted above, Hough's counsel confirmed that she is not exerting privilege over the documents at issue.

administrative task. Other AR documents refer to legal fees and the payment of legal bills. The undersigned created the notes section of the attached log to assist the court in its determination that the content of the documents are not privileged. Exhibit B.

Several of the emails between the defendants and Minchenberg reference an attorney but are either administrative in nature or forwarded from third parties. Included in those documents are emails about the status of the audit, legal fees and other administrative tasks.

Other emails are between the defendants and/or Minchenberg and one of the attorneys, but do not seek legal advice. These AR documents include emails about contact information, canceling a meeting in Florida due to a hurricane, and reporting information from third parties.

The bulk of the AR documents are emails between the defendants and/or Minchenberg and one of the accountants at S&A that reference an attorney, but do not discuss confidential content. These emails are primarily conversations between Minchenberg and Dean Hiltzik, an S&A accountant, about the status of the work being done by S&A. There are also emails about the legal confirmations required to complete the audit, the status of the IRS Forms 5471 (Information Return of U.S. Persons with Respect to Certain Foreign Corporations) and the restructuring of the defendants' entities.

Trial in this matter is fast-approaching. For the government to properly prepare for trial, the prosecution team should have access to the documents, largely emails written by Minchenberg, a witness likely to be called by the government. Without knowing the content of the documents, the prosecution team would be at a

8

disadvantage during cross-examination of Minchenberg or any other witness that may have been a party to these emails.  It would be in the interest of justice and a fair trial to provide the documents to the prosecution.

As such, the taint team requests this court review the documents contained in Exhibit A and summarized in Exhibit B, to determine they contain no privileged communications and to allow the taint team to release them to the prosecution team for their trial preparation.

ROBERT E. O'NEILL
United States Attorney

By:    /s/ Erin Mellen   *Erin Mellen/ NM*
ERIN MELLEN
Trial Attorney
Department of Justice, Tax Division
2110 First Street, Suite 3-137
Fort Myers, Florida 33901
Telephone: (202) 305-4075
Facsimile: (202) 514-9623
E-mail: Erin.S.Mellen@usdoj.gov

## CERTIFICATE OF SERVICE

I have served copies of this filing on the following parties using email:

Nathan J. Hochman
Daniel Saunders
Bingham McCutchen, LLP
The Water Garden
1601 Cloverfield Blvd., Suite 2050 North
Santa Monica, CA 90404-4082

Bruce L. Udolf
Bruce L. Udolf, P.A.
500 E. Broward Blvd.
Suite 1400
Ft. Lauderdale, FL 33394

Charles Edward Falk
Law Office of Charles Edward Falk
25 Devonshire Lane
Mendham, NJ 07945

/s/ Erin S. Mellen   *Erin Mellen /nmm*
Erin S. Mellen
Trial Attorney
Department of Justice, Tax Division
2110 First Street, Suite 3-137
Fort Myers, Florida 33901
Telephone: (202) 353-2121
Facsimile: (202) 514-0961
E-mail: Erin.S.Mellen@usdoj.gov

10

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,      )

          )

       v.                    )     Case No. 2:13-cr-72-FtM-JES

          )

DAVID LEON FREDRICK and      )     **UNDER SEAL**

PATRICIA LYNN HOUGH,        )

## [PROPOSED]ORDER FOR DETERMINATION OF PRIVILEGE

This matter comes before the Court on the Taint Team Attorney's Motion for The Determination of Privilege to determine whether sixty-four documents provided by a witness should be deemed to contain communications protected by the attorney-client privilege. Based on the Court's review of the motion and an *in camera* review of the documents the Court finds that there are no privileged communications between either defendant and his or her attorneys in these documents and that they shall be produced to the prosecuting attorneys for the United States.

Accordingly, it is now

ORDERED:

The Motion for The Determination of Privilege is GRANTED. The Taint Team Attorneys shall produce the sixty-four documents, to the prosecuting attorneys for the United States.

DONE and ORDERED at Fort Myers, Florida, this ___ day of September, 2013.

                              _____
                              JOHN E. STEELE
                              UNITED STATES DISTRICT COURT JUDGE

11